IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY ALAN WILSON, | : | |
| | : | |
| Plaintiff, | : | No. 4:04-CV-2784 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| PRIMUS TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

**M E M O R A N D U M**

October 12, 2005

**BACKGROUND:**

On December 22, 2004, plaintiff, Rodney Alan Wilson, filed a pro se complaint alleging violations of Title VII of the Civil Rights Act of 1964, § 701, et seq., as amended, 42 U.S.C. § 2000e et seq., ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 955 et seq., ("PHRA"), against his employer, Primus Technologies Inc.. Wilson alleged that he was discriminated against and harassed on a daily basis at work. Plaintiff's complaint asserts that his supervisors racially harassed him, and that the harassment culminated in his

1

demotion.[1]

On July 15, 2005, defendant filed a motion for summary judgment. Shortly thereafter, defendant filed a brief in support of its motion for summary judgment. Plaintiff then failed to file a brief in opposition by the scheduled deadline. We then ordered plaintiff to file an opposing brief by September 2, 2005, or have his complaint subject to dismissal for failure to prosecute and failure to comply with a court order. On September 2, 2005, plaintiff filed a Response to Defendant's Motion for Summary Judgment (Rec. Doc. No. 13),[2] which the court will construe as a brief in opposition to defendant's motion for summary judgment. Defendant did not file a brief in reply, and the matter is now ripe for our decision. For the following reasons we will grant defendant's motion for summary judgment, enter judgment in favor of defendant and against plaintiff, and direct the Clerk to close the case file.

**DISCUSSION:**

---

[1] The complaint also asserts that Dave Balsekat, one of plaintiff's supervisors, caused Wilson to lose his bonus by adding a day of vacation time. (Rec. Doc. No. 1, at 2.) Plaintiff has not elaborated on this allegation, nor come forward with supporting evidence.

[2] Plaintiff has handwritten a series of statements in response to the numbered statements set forth in defendant's motion for summary judgment, (Rec. Doc. No. 10.).

# I. LEGAL STANDARD

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party. Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, (3d Cir. 1995). The nonmoving party, however, cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. See Celotex, 477 U.S. at 32;

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II. FACTUAL BACKGROUND

First, we note that defendant complied with Local Rule 56.1 and filed a separate and concise statement of uncontested material facts. (Rec. Doc. No. 10.)

Plaintiff, meanwhile, has not introduced any evidence into the record that creates a genuine issue of material fact. Instead, plaintiff, who is pro se, made only additional allegations when he wrote responses adjacent to various paragraphs in defendant's motion for summary judgment. (Rec. Doc. No. 13.) In order for plaintiff to create a genuine issue of material fact he needed to make citations to evidence in the record; otherwise, under Local Rule 56.1 the material facts set forth by the moving party are deemed to be admitted.

Although plaintiff says that he told defendant's counsel everything that was done to him, the court notes that we only have before us those portions of plaintiff's deposition that defendant has provided us. Therefore, what follows is largely taken from the defendant's statement of material facts.

On or about October 11, 1999, plaintiff began his employment with the defendant. Plaintiff was initially employed in defendant's stockroom. Plaintiff had problems with his work performance in the stockroom. On May 5, 2003, Wilson

was transferred from the stockroom to defendant's soldering department allegedly because of his performance at work. When he was transferred, plaintiff's terms and conditions remained the same; including his rate of pay, benefits, and hours of work.

After plaintiff was transferred to the soldering department he filed a Workers' Compensation claim. While waiting for a determination on his Workers' Compensation claim, Wilson filed for disability benefits. Plaintiff was approved for and received disability benefits for more than a year. Plaintiff testified at his deposition that he was removed from defendant's employment roster for a reason unrelated to his race. (Rec. Doc. No. 10, Ex. at 13.)

Wilson knew to take any problems to defendant's Human Resources Manager, Samuel Shea. Plaintiff had taken work-related problems to Shea, and was satisfied with the way that Shea had handled prior work-related problems. Wilson testified that Shea had handled the issues he raised to him in a prompt and professional manner. (Rec. Doc. No. 10, Ex. at 17.)

### III. WILSON'S TITLE VII & PHRA CLAIMS

At the outset, we note that PHRA claims are interpreted coextensively with Title VII claims. Douris v. Genaurdi's Family Markets, Inc., 132 Fed. Appx. 425, 425 n.1 (3d Cir. 2005) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.

1996)); <u>Dennison v. Pennsylvania Dept. Of Corrections</u>, 268 F. Supp. 2d. 387, 405 n.16 (M.D. Pa. 2003) (Munley, J.). Therefore, our analysis under Title VII applies with equal force to Wilson's claims under the PHRA.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1).

<u>A. Racial Discrimination Based On An Adverse Employment Action</u>

When a court evaluates a summary judgment motion alleging racial discrimination it employs the burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). First, in order to defeat a summary judgment motion in a race discrimination case, a plaintiff must adduce sufficient evidence to establish a prima facie case of discrimination. In order to establish a prima facie case of racial discrimination a plaintiff must establish that: (1) that he is a member of a protected class; (2) that he is qualified for the position; (3) that he was subject to an adverse employment action; and (4) that employees not in the protected class were treated more favorably, so as to give rise to an inference of unlawful discrimination. <u>Josey v. John R. Hollingsworth Corp.</u>, 996 F.2d 632, 638 (3d Cir. 1993); <u>see</u> <u>also</u> <u>Jones v. School Dist. of Philadelphia</u>, 198 F.3d 403, 410-

411 (3d Cir. 1999).

Once the plaintiff has made a prima facie case of racial discrimination the burden shifts to the defendant to come forward with admissible evidence that supports a legitimate, nondiscriminatory reason for the adverse action. McDonnell Douglas, 411 U.S. at 802. "If the defendant's evidence creates a genuine issue of fact, then the presumption of discrimination drops from the case." Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997) (citing Texas Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 260 (1981)). The burden then falls on the plaintiff to show that the "'employer's proffered reason [for the employment action] was not the true reason for the . . . decision' but was instead pretextual." Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993)).

The third element of a prima facie case of racial discrimination is the production of sufficient evidence that plaintiff has been subject to an adverse employment action. The United States Supreme Court has defined an adverse employment action as:

> A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. . . . A tangible employment action in most cases inflicts direct economic harm.

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 762 (1998).

The Third Circuit has defined an "adverse employment action" as "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001); and Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).

 Defendant contends that in the instant case plaintiff has failed to "even state a colorable claim that an adverse employment action of any manner has occurred." (Rec. Doc. No. 11, at 6.) Plaintiff alleges, however, that he was "demoted" to the soldering department.[3] Defendant asserts that when he was transferred to that department his rate of pay, benefits, and hours of work all remained the same and that he had no changes in the terms or conditions of his employment. The Third Circuit, however, has held that under certain circumstances a job transfer, even without a loss of pay or benefits, could constitute an adverse employment action.

---

[3]This "demotion" occurred on May 5, 2003. (Rec. Doc. No. 1, Ex.) At his deposition, plaintiff testified that his release from employment with defendant was not related to his race. (Rec. Doc. No. Rec. Doc. No. 10, Ex., at 13, lns. 19-24.) Plaintiff was removed from defendant's employment roster in 2004, after receiving disability benefits for more than a year. (Rec. Doc. No 10, Ex., at 12.)

See Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994); McGrenaghan v. St. Denis Sch., 979 F. Supp. 323, 326 (E.D. Pa. 1997); see also Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 787-88 (3d Cir. 1998) (transfer to a different shift that included a loss in free time and which, as evidenced by affidavit, was considered by workers as a "punishment shift" was sufficient evidence of an adverse employment action to state a prima facie case). From plaintiff's filings it is clear that he is alleging that being transferred from the stockroom to the soldering department was a punishment and that he lost privileges associated with his original job because of his race. (See Rec. Doc. No. 13, at 2, ¶¶ 6-8.)

The McDonnell Douglas prima facie case has never been a pleading requirement; it is the plaintiff's initial evidentiary burden. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). The plaintiff has the burden of proof by the preponderance of the evidence at the prima facie stage. Burdine, 450 U.S. at 253-54. Plaintiff's failure to come forward with any evidence in support of his allegations that his demotion to the soldering department impacted the privileges of his job prevents him from establishing a prima facie case of discrimination. Plaintiff, in his response, has only indicated that "witnesses will come forth" to prove that a tangible employment action was taken based on the plaintiff's race. (Rec. Doc. No. 13, at 2.) Although the plaintiff's burden of production to establish

9

a prima facie case is not onerous, Wilson has only provided the court with vague allegations that his transfer constituted a tangible employment action. Therefore, we find that plaintiff cannot state that there was an adverse employment action, and we now address his claim under a hostile work environment theory.

### B.  Racial Discrimination Based On A Hostile Work Environment Theory

To the extent plaintiff's claim for employment discrimination is based on a hostile work environment theory, plaintiff must show that (1) he suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996); Ocasio v. Lehigh Family Health Ctr., 368 F. Supp. 2d 370, 376 (E.D. Pa. 2003).

An actionable hostile work environment exists when "the harassment is so severe and pervasive that it alters the conditions of the victim's employment and creates an abusive environment." Weston v. Pennsylvania, 251 F.3d 420, 426 (citing Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986)). The Supreme Court has outlined the substantive contours of behavior that constitutes a hostile work environment, and has directed the lower courts to "look[] at all the

circumstances" in determining whether an environment is sufficiently hostile or abusive. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (quoting Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993)). This multi-factor analysis includes the courts' looking at the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher, 524 U.S. at 788 (quoting Harris, 510 U.S. at 23); Ocasio, 368 F. Supp. 2d at 376. The Supreme Court then noted that, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (citations and internal quotation marks omitted). In order for a claim to be actionable, "[t]he plaintiff must subjectively perceive the environment to be hostile or abusive, and conditions must be such that a reasonable person would have the same perception." Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 715 (3d Cir. 1997) (citing Harris, 510 U.S. at 21).

    Defendant asserts that, for numerous reasons, Wilson cannot succeed under a hostile work environment theory. Defendant asserts that Wilson (1) has failed to demonstrate sufficiently severe or pervasive behavior, (2) that his claims are time-barred, and (3) that defendant is entitled to an affirmative defense because of

11

plaintiff's failure to complain about the harassment when it was occurring.[4]

First, we turn to defendant's argument that plaintiff is time-barred. Defendant asserts that plaintiff is governed by the 180-day filing rule under 42 U.S.C. § 2000e-5(e). This is erroneous; plaintiff is entitled to the extended 300-day rule, even though he first filed with the EEOC more than 180 days after the alleged discrimination. Pennsylvania is a deferral state with a worksharing agreement between the PHRC and the EEOC. This agreement entitles civil rights plaintiffs to the extended 300-day filing rule regardless of the state filing. See, e.g., EEOC v. Commercial Office Prods., 486 U.S. 107, 124 (1988); Bailey v. United Airlines, 279 F.3d 194, 197 (3d Cir. 2002); Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000); Malone v. Specialty Prods. & Insulation Co., 85 F. Supp. 2d 503, 505 (E.D. Pa. 2000).

When a plaintiff alleges a hostile work environment, as Wilson has in this case, acts occurring more than 300 days before the date plaintiff filed with the EEOC may be considered, so long as those acts are a part of the same hostile work environment, and at least one act occurred within the 300 day limit. See Nat. R.R.

---

[4]We note that defendant has not set forth what the employer's antiharassment policy was, and how it was communicated to its employees, which, although not necessary in every case, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998), would certainly help defendant establish its affirmative defense.

Passenger Corp. v. Morgan, 536 U.S. 101, 116-19 (2002).

In the instant case, plaintiff filed his initial claim with the EEOC on May 31, 2004.  (Rec. Doc. Doc. No. 1, Ex.)  Plaintiff testified that from August 2003, when he went on disability, through May 31, 2004, the defendant took no discriminatory actions against him.  (Rec. Doc. No. 11, Ex., at 49.)[5]  Thus, any acts which plaintiff relies on to assert his hostile work environment claim occurred more than 180 days before he filed his complaint.  However, some of those actions occurred within 300 days; because some of the acts occurred within 300 days of plaintiff's EEOC filing, the court will also consider related acts that occurred more than 300 days prior to that filing. Therefore, defendant's time-bar argument is unconvincing.

We now examine whether plaintiff has alleged acts which are sufficiently severe or pervasive to create a hostile work environment.  Plaintiff has asserted that he was called race-related names by various employees and supervisors, including on at least one occasion "nigger," and another occasion "monkey."

"Pervasive" incidents "must be more than episodic, they must be sufficiently continuous and concerted."  Faragher, 524 U.S. at 787 n.1 (citations omitted); see

---

[5] We note that plaintiff indicated in his initial EEOC filing that the latest date of discrimination was November 3, 2003.  (Rec. Doc. No. 1, Ex.)  Under that more recent date, plaintiff filed his EEOC complaint 210 days after the last alleged discriminatory act.

13

also <u>Harris v. Smithkline Beecham</u>, 27 F. Supp. 2d 569, 578 (E.D. Pa. 1998) (holding "[a] plaintiff cannot rely upon casual, isolated, or sporadic incidents to support her claim of hostile work environment harassment"). We find that plaintiff has simply not come forward with enough specific evidence to demonstrate that the conditions of his workplace were so unbearable as to effect the terms and conditions of his employment. <u>See</u>, <u>e.g.</u>, <u>King v. City of Philadelphia</u>, 66 Fed.Appx. 300, 302, 305 (3d Cir. Apr. 1, 2003) (finding events "isolated and sporadic" where plaintiff alleges that he was called "nigger," physically pushed, and threatened with having his work sabotaged); <u>Singletary v. Missouri Dep't of Corrections</u>, – F.3d – , 2005 WL 2218039, at *5 (8th Cir. Sept. 14, 2005) ("Racial epithets are morally repulsive. But our cases require that a plaintiff show more than a few occurrences over a course of years. To be actionable, such conduct must be shown to occur with such frequency that the very conditions of employment are altered and be viewed by a reasonable person as hostile."); <u>see</u> <u>also</u> <u>Money v. Provident Mut. Life Ins. Co.</u>, 2005 WL 1417095, at *6 (E.D. Pa. June 15, 2005) (gathering cases where derogatory comments were found not to be pervasive or regular). Plaintiff has provided scant evidence of racial insensitivity and harassment and we do not believe it would have adversely altered the working conditions of a reasonable employee. We cannot find that reasonable jurors would disagree.

14

Furthermore, to establish that conduct was sufficiently severe or pervasive the plaintiff must subjectively perceive the environment to be hostile or abusive. Konstantopoulos, 112 F.3d at 715 (3d Cir. 1997) (citing Harris, 510 U.S. at 21). Wilson, by his own testimony, has indicated that he found the name calling only "little things" and did not bring those incidents to the immediate attention of his supervisor. (Rec. Doc. No. 11, Ex., at 44.) And those issues that Wilson did bring to the attention of his supervisor, those matters he considered "of real importance," were resolved to his satisfaction. There is no basis in the record for a reasonable jury to find that Wilson perceived the harassment to be so severe or pervasive to alter his working conditions when he characterized the harassment as "little things" that were not of "real importance" in his deposition testimony.

For all of the above reasons, defendant is entitled to a judgment in its favor on its motion for summary judgment.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY ALAN WILSON, | : | |
| | : | |
| Plaintiff, | : | No. 4:04-CV-2784 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| PRIMUS TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

October 12, 2005

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for summary judgment is granted. (Rec. Doc. No. 10.)

2. Final judgment is entered in favor of defendant Primus Technologies Inc. and against plaintiff Rodney Alan Wilson.

3. The Clerk is directed to close the case file.

   s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

1